United States District Court
Southern District of Texas
**ENTERED**
August 23, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| SCHST, Inc. d/b/a Space City Services, | § § § | |
| | § | |
| *Plaintiff,* | § | Case No. 4:21-cv-02935 |
| | § | |
| v. | § | |
| | § | |
| Arthur J. Gallagher & Co., Certain Underwriters at Lloyd's London, Miller Insurance Services, LLP, and CRC Insurance Services, Inc., | § § § § § | |
| | | |
| *Defendants.* | | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

In this insurance dispute, Defendants Arthur J. Gallagher & Co., Miller Insurance Services, LLP, and CRC Insurance Services, Inc. have moved to dismiss all claims asserted in Plaintiff SCHST, Inc.'s amended complaint. Dkt. 33 (Miller); Dkt. 34 (Gallagher); Dkt. 37 (CRC). The motions were referred to the undersigned judge. Dkt. 55.

After carefully considering the motions, SCHST's responses, Dkt. 41, 43, 45, Defendants' replies, Dkt. 47, 49, 51, the amended complaint, Dkt. 32, and the applicable law, it is recommended that Gallagher's motion to dismiss be granted in part and denied in part, and that all claims except for fraudulent

misrepresentation be dismissed.  It is further recommended that CRC's and Miller's motions to dismiss be granted.

## Background

At its core, this dispute pertains to the denial of full coverage for property losses that SCHST sustained during Hurricane Harvey on August 29, 2017. Through Gallagher, SCHST procured a policy from Lloyd's of London to insure SCHST's equipment, including dozens of trucks and trailers.  Dkt. 32 ¶ 10.

A few days before Harvey struck, Gallagher's representative, Kevin Gregory, allegedly visited SCHST's facility and prepared a list of the equipment.  *Id.*  The amended complaint asserts that Gregory told SCHST that the list did not need to state the values of the property; the amount of equipment was sufficient.  *Id.*  When asked, Gregory allegedly assured SCHST that the list was sufficient to satisfy policy requirements.  *Id.*

The following week, Hurricane Harvey flooded SCHST's property, causing extensive damage to its equipment.[1]  *Id.* ¶ 12.  SCHST promptly filed a claim with Lloyd's.  *Id.*  Over the ensuing weeks, adjusters came and went or were reassigned. *Id.* ¶¶ 12-14.  During the claims-handling process, disputes

---

[1] The amended complaint identifies the date of Hurricane Harvey as "August 29, *2021*."  Dkt. 32 ¶ 12 (emphasis added).  That appears to be a typographical error because Harvey passed through the Houston area on that day in 2017.  *See* National Weather Service, *Major Hurricane Harvey – August 25-29, 2017*, https://www.weather.gov/crp/hurricane_harvey.

arose over how much damage SCHST had sustained and whether certain entities possessed or had provided certain lists, reports, or schedules addressing SCHST's property. *See id.* ¶¶ 15-21. These entities included the adjuster, ARM, which was retained by Miller, and CRC, whose role and relationship is not explained. *Id.* ¶¶ 19-20. In February 2018, ARM sent a letter informing SCHST that some of its equipment would not be covered because it was not on the policy's equipment list. *Id.* ¶ 20.

Lloyd's made two partial payments of the claim, one of which was paid in April 2018. *Id.* ¶ 22. The next year, Lloyd's requested an examination under oath of SCHST's representative, but halted it because more information was needed. *Id.* ¶ 23-24. Lloyd's then invoked the contractual appraisal process in June 2020. *Id.* ¶ 25. According to SCHST, the appraisal umpire awarded it $1,875,000 for "Sound Value" and $1,218,750 for damages sustained during Hurricane Harvey. *Id.* ¶ 26. On December 18, 2020,[2] however, Lloyd's issued payment for $285,145.10, asserting that the remainder of the award concerned equipment that was not properly listed on the policy's schedule. *Id.* ¶ 27.

On August 21, 2021, SCHST filed a state-court suit against Lloyd's and Gallagher, but also sued Miller and CRC. Dkt. 1-2. Defendants removed the

---

[2] Elsewhere, the complaint alleges that Lloyd's issued its denial on November 30, 2020. Dkt. 32 ¶ 29. For purposes of this opinion, the Court assumes that the later, December 18, 2020 date controls.

suit to this Court, invoking diversity jurisdiction.  Dkt. 1.  After SCHST amended its pleading, Dkt. 32, various Defendants filed the pending motions to dismiss.  Dkts. 33, 34, 37.

## **Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, "the complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (analyzing *Twombly*, 550 U.S. at 555-56).

In addition, averments of fraud must be pleaded with particularity.  Fed. R. Civ. P. 9(b).  This means a plaintiff must set forth the "the particulars of the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal quotation marks and citation omitted).  Rule 9(b)'s heightened pleading standard extends to claims of negligent misrepresentation and under the DTPA and Texas Insurance Code that are premised on the same factual

allegations. *See Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 435 (S.D. Tex. 2016) ("Claims alleging violations of the Texas Insurance Code and the DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b).") (quoting *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998)); *see also Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010) (negligent misrepresentation). Failure to satisfy Rule 9(b)'s requirements warrants dismissal for failure to state a claim. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) (treating Rule 9(b) dismissal "as a dismissal for failure to state a claim upon which relief can be granted").

## Analysis

## I.   SCHST's Claims against Gallagher

Apart from SCHST's allegations against its insurer, Lloyd's—the only defendant that did not file a motion to dismiss—its allegations against Gallagher are the most expansive. Nonetheless, Gallagher has moved to dismiss all claims against it as untimely or inadequately pleaded. Dkt. 34.

The Court agrees that most of the claims against Gallagher are barred by limitations—specifically, the claims under Tex. Ins. Code Ann. §§ 541.060 and 541.061 and the Deceptive Trade Practices Act ("DTPA"), Dkt. 32 ¶¶ 37-44, 49-54, and the common law claims for negligence, *id.* ¶¶ 57-59, unjust

enrichment, *id.* ¶¶ 60-61, negligent misrepresentation, *id.* ¶¶ 62-64, "negligent" inducement, *id.* ¶¶ 65-68, and conspiracy, *id.* ¶¶ 69-70. The Court also agrees with Gallagher that the claims for breach of contract, *id.* ¶¶ 32-36, and fraudulent inducement, *id.* ¶¶ 65-68, are insufficiently pleaded. In addition, the claims for breach of the duty of good faith and fair dealing, *id.* ¶¶ 55-56, and under statutory prompt pay provisions, *id.* ¶¶ 45-48 (Tex. Ins. Code Ann. § 542.060), are precluded on other grounds. But SCHST has adequately and timely alleged a claim for fraudulent misrepresentation. *Id.* ¶¶ 62-63. For that claim only, Gallagher's motion to dismiss should be denied.

## A.   The majority of SCHST's claims are barred by limitations.

Most broadly, Gallagher asserts that SCHST's claims are untimely. Dkt. 34 at 6-7; Dkt. 51 at 1-2. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). The Court agrees with Gallagher that most—but not all—the claims are time-barred.

The bulk of SCHST's claims are subject to a two-year limitations period: negligence, negligent misrepresentation, "negligent inducement," and conspiracy,[3] the statutory claims under the DTPA and under certain provisions

---

[3] Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (limitations period for injury to property).

6

of the Texas Insurance Code,[4] and unjust enrichment[5].  For these claims, Gallagher argues that SCHST's losses stem from Hurricane Harvey, which struck on August 29, 2017—more than four years before SCHST filed suit on August 12, 2021.  Dkt. 34 at 6.  Citing the amended complaint, Gallagher also asserts that SCHST was aware as early as September 8, 2017, but at least by February 2018, of alleged deficiencies in the equipment list that Gallagher had prepared.  Dkt. 34 at 6-7 (citing Dkt. 32 ¶¶ 13, 19, 20).  SCHST, on the other hand, responds that its claims did not accrue until Lloyd's denied SCHST's claim for full coverage on December 18, 2020, and thus were timely filed.  Dkt. 43 ¶¶ 17-20; Dkt. 32 ¶ 27 (alleging Lloyd's denial on Dec. 18, 2020).

Determining when a cause of action accrues presents a question of law. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566-67 (Tex. 2001). A cause of action generally accrues "when the wrongful act effects an injury, regardless of when the plaintiff learned of such injury," *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990), "however slight[ ]" that injury may be, *Murphy v. Campbell*, 964 S.W.2d 265, 273 (Tex. 1997).

---

[4] Tex. Bus. & Com. Code Ann. § 17.565 (DTPA limitations period); Tex. Ins. Code Ann. § 541.162 (limitations period for unfair settlement practices, Tex. Ins. Code § 541.060, and for misrepresentation of insurance policy, *id.* § 541.061).  SCHST's additional claim under the prompt-pay provisions of the Texas Insurance Code is addressed separately, in Part I.C.

[5] *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870-71 (Tex. 2007) (per curiam) (applying two-year limitations period to unjust enrichment claims).

Neither party attempts to parse the factual basis for SCHST's myriad claims against Gallagher.   Yet the primary allegations concern Gallagher's alleged misconduct when preparing the original equipment list submitted before Hurricane Harvey.   Dkt. 32 ¶¶ 10-11, 28-29.   Other allegations accuse Gallagher of failing to properly convey information or being unresponsive during the claims-handling process.   *See id.* ¶¶ 18, 19.   Because the analysis of accrual differs for these theories, they are addressed separately below.

### 1.   Challenges to Gallagher's pre-loss conduct

For allegations accusing Gallagher of pre-loss misconduct, multiple decisions lead to the conclusion that SCHST's claims are untimely—at least those governed by a two-year limitations period.

SCHST's position that its claims did not accrue until Lloyd's refused to pay the appraisal award tacitly invokes the rationale in *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998).   The *Johnson* case held that a claim against an agent who negligently failed to procure insurance accrued when the insurer denied coverage.   *Id.*   But there was no indication that the insurer was refusing to pay the plaintiff's claim until it affirmatively denied coverage.   *See id.* at 512-13.   By contrast, SCHST's allegations reflect that Lloyd's made deficient payments as early as April 2018. Dkt. 32 ¶ 22 (asserting "partial payment" of $382,281.51 in April 2018 "was far below value").   Based on those allegations, SCHST "was not only harmed" at

8

least by April 2018, but SCHST "also knew or should have known at that time" that Gallagher's misconduct might have been responsible.  *See Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 515.

The untimeliness of these claims is reinforced by the Fifth Circuit's decision in *TIG Insurance Co. v. Aon Re, Inc.*, 521 F.3d 351, 354-55 (5th Cir. 2008).   There, the insured, TIG, sued its agent, Aon Re, for negligently submitting incomplete loss information when procuring a reinsurance treaty from U.S. Life.  *See id.* at 353-54.  TIG filed the suit after an arbitration decision voided the treaty.  *Id.* at 354-55 (arbitration decision May 5, 2004; suit filed June 15, 2004).  But the treaty itself had been issued many years earlier. *Id.* at 353-54 (policy issued in June 1998).  Relying on the Texas Supreme Court's decision in *Murphy v. Campbell*, the Fifth Circuit held that TIG suffered a "legal injury ... on the date the treaty with U.S. Life became binding because that agreement was impaired from the outset by Aon Re's misrepresentations."  *Id.* at 356 (discussing *Murphy*, 964 S.W.2d at 273). Notably, the Fifth Circuit distinguished *Johnson* on its facts, observing that "[t]here was no contention ... that the plaintiff's suit against its agent accrued when the agent made misrepresentations to the plaintiff and the plaintiff entered into a contract in reliance on those misrepresentations."  *Id.* at 357.

This case differs from *TIG Insurance* in that SCHST does not assert Gallagher's actions rendered the policy void, but rather that its pre-loss

9

conduct led certain property to be omitted from the scope of coverage. Nonetheless, there are apparent parallels.  Like TIG's procurement of the reinsurance treaty based on Aon Re's misrepresentations, SCHST asserts that Gallagher's misconduct impacted coverage for SCHST's equipment.  Dkt. 32 ¶¶ 11.  And like TIG's execution of the reinsurance treaty in reliance on Aon's representations, 521 F.3d at 357, SCHST asserts that it relied on and was bound to the deficient equipment list that Gallagher prepared—thereby sustaining a legal injury—upon sustaining losses during Hurricane Harvey on August 29, 2017.  Under *TIG Insurance*'s rationale, SCHST's claims accrued at that time, almost four years before it filed this suit.

The discovery rule does not help SCHST.  In *TIG Insurance*, the Fifth Circuit categorically rejected application of the discovery rule, concluding that TIG's injury—"the consummation of an agreement between TIG and U.S. Life that was based on incomplete underwriting data"—was not "inherently undiscoverable because it is the type of injury that could have been discovered by the exercise of reasonable diligence."  521 F.3d at 358 (emphasizing that entities like TIG have many sources for determining the accuracy of information provided to a contractual counterparty).  There is similarly no indication that SCHST exercised reasonable diligence in this case.  SCHST allegedly did not receive a copy of the insurance policy until after Hurricane Harvey struck.  Dkt. 32 ¶ 28.  Yet SCHST does not assert that it requested a

copy of the policy during the month before the storm. There are also no allegations that SCHST, during that period, attempted to verify with Lloyd's that the equipment list was sufficient. *See* Dkt. 32 ¶¶ 10-11.

Moreover, the discovery rule provides that a limitations period begins to run "as soon as the claimant knows or is put on notice that the advice is faulty, which may be well before a third party takes any adverse action against the plaintiff." *TIG Ins. Co.*, 621 F.3d at 355 (observing that the claim in *Murphy* "accrued at *the latest* when the IRS sent a deficiency notice"). SCHST's allegations reflect that it had notice of Gallagher's allegedly flawed advice and errors in the equipment list at least by February 2018. *See* Dkt. 32 ¶ 20. That was when the adjuster, ARM, allegedly "sent a letter stating that certain equipment would not be covered because [it was] not scheduled."[6] *Id.* SCHST was not free to disregard this "red flag" by waiting three more years before filing suit. *See* Dkt. 1-2; Dkt. 32 ¶ 27; *TIG Ins. Co.*, 521 F.3d at 358 (recognition that U.S. Life's reinsurance bid was unusually low raised a "red flag" that TIG should have investigated).

*TIG Insurance* further forecloses SCHST's contention that it lacked a judicial remedy before Lloyd's final coverage determination. *See* Dkt 43 ¶ 18;

---

[6] Notably, SCHST received ARM's letter after Gallagher allegedly told SCHST in October 2017 that the damaged equipment was included in an appraisal report. Dkt. 32 ¶ 17. So regardless of Gallagher's statement, the subsequent letter should have signaled potential defects in the original equipment list.

11

*TIG Ins. Co.*, 521 F.3d at 356 (rejecting TIG's argument that it had no cognizable damages until U.S. Life rescinded the reinsurance treaty).  Quoting *Murphy*, the Fifth Circuit emphasized that deferring accrual of causes of action "for prolonged and indeterminate periods of time" while resolving disputes with third parties would undermine "the policy of repose underlying the statute of limitations ...."  *Id.* (quoting *Murphy*, 964 S.W.2d at 273).  In the Fifth Circuit's view, TIG "could have sued Aon Re" earlier and "simultaneously pursued a declaratory judgment or other action against U.S. Life to clarify or determine the validity or extent of coverage of the treaty."  *Id.*

The same is true here.  Nothing precluded SCHST from promptly seeking a declaration against Lloyd's that the equipment list was sufficient to trigger coverage, while asserting alternative claims that Gallagher had improperly prepared the list or misrepresented its adequacy.  *See, e.g.*, *Triyar Cos., LLC v. Lexington Cos.*, 2013 WL 3280033, at *2-4 (S.D. Tex. 2013) (claim against insurer for declaration of coverage was ripe even when filed before insured submitted sworn proof of loss, calculated its damages, and received denial of coverage); *Murphy*, 964 S.W.2d at 272 (necessity of taking inconsistent positions against taxing authority and accountant can be avoided by "abat[ing] the malpractice case pending final resolution of the tax suit").  SCHST's claims governed by a two-year limitations period and premised on Gallagher's pre-loss conduct are time-barred.

2.   Challenges to Gallagher's post-loss conduct

The foregoing authorities and allegations likewise foreclose SCHST's claims challenging Gallagher's post-loss conduct.  According to the complaint, Gallagher assured SCHST in September 2017 that the adjuster (ARM) had an appraisal report, represented in October 2017 that damaged equipment was included on the report, failed in January 2018 to share the equipment list and reiterated prior representations that the list was sufficient, and continued in April 2018 to include equipment on a breakdown.  Dkt. 32 ¶¶ 16-17, 19, 21.

To the extent that SCHST asserts that these post-loss acts or omissions caused Lloyd's denial of coverage, that legal injury occurred no later than April 2018 when Lloyd's paid only a portion of SCHST's claim.  *See* Dkt. 32 ¶ 22; *Murphy*, 964 S.W.2d at 273 (cause of action accrues "when the plaintiff knows or reasonably should know that he has been legally injured by the alleged wrong, however slightly").  And even if SCHST is seeking delay-related damages—which is not asserted, *see, e.g.*, Dkt. 32 ¶ 63 (seeking damages for negligent misrepresentation equal to "the difference between the Umpire Award and the amount paid by Lloyds")—its allegations state that other entities told SCHST, during the same timeframe, that they lacked information that Gallagher either should have or stated that it had provided.  *See* Dkt. 32 ¶¶ 16-21 (detailing conflicting representations from September 2017 through April 2018).  These "red flag[s]" gave SCHST sufficient notice of Gallagher's

13

claimed misconduct at least by April 2018. *See TIG Ins. Co.*, 521 F.3d at 358. Moreover, SCHST could have sued Lloyd's for a declaration of coverage—even before its final refusal to pay the claim in full—while also suing Gallagher for causing delays. *See, e.g.*, *Triyar Cos., LLC*, 2013 WL 3280033, at *2-4 (permitting suit against insurer for declaration of coverage even before coverage is denied); *TIG Ins. Co.*, 964 S.W.2d at 356. All claims against Gallagher governed by a two-year statute of limitations are untimely.

### 3.   Common-law fraud and breach of contract claims

The result is different for SCHST's fraud claims. Contrary to Gallagher's contentions, Dkt. 34 at 6, fraudulent misrepresentation or inducement is subject to a *four*-year limitations period. Tex. Civ. Prac. & Rem. Code Ann. § 16.004(4).   Regardless, Gallagher's earliest alleged misrepresentation occurred on August 23, 2017, Dkt. 32 ¶ 11, less than four years before this suit was filed, Dkt. 1. Based on the complaint, the fraud claims are timely.

For the breach of contract claim, Gallagher asserts that SCHST untimely filed it more than four years after Hurricane Harvey struck. Dkt. 34 at 7. Because this contract claim fails on other grounds, *see infra* Part I.B, it is unnecessary to reach this issue.

## B.   SCHST failed to adequately plead a breach of contract claim against Gallagher.

Apart from disputing the timeliness of SCHST's breach of contract claim, Gallagher contends that SCHST's allegations are inadequate.  Dkt. 43 at 7-8. The threshold question for any breach of contract claim is whether a valid and enforceable contract exists.  *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (first element).   That element, in turn, requires an offer, acceptance, consent to material terms, and an intent to make the agreement binding.   *See Provision Grp., Inc. v. Crown Toxicology, Ltd.*, 2017 WL 11221433, at *4 (W.D. Tex. Oct. 19, 2017) (rejecting claim that failed to plead facts supporting these requirements, citing *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004, pet. denied)).

SCHST's complaint just asserts, in conclusory fashion, that the parties "had an agreement" that Gallagher would procure insurance for SCHST, and that Gallagher breached it by failing to assist SCHST or Lloyd's after the loss or by continuing to assure SCHST that it had complied with the policy.  Dkt. 32 ¶ 34.   At most, however, the factual allegations assert that SCHST purchased a policy through Gallagher's representative, that the representative made certain representations about the sufficiency of SCHST's equipment list, *id.* ¶¶ 10-11, 28, and that Gallagher engaged in other acts or omissions after Harvey struck, *id.* ¶¶ 15-19, 28-29.

15

Omitted are any facts substantiating the requirements for an actual, enforceable agreement between SCHST and Gallagher: "offer, acceptance, consent to its terms, the terms themselves ..., or consideration." *See Specialties of Mex. Inc. v. Masterfoods USA*, 2010 WL 2488031, at *7 (S.D. Tex. June 14, 2010) (dismissing breach of contract claim that lacked these factual specifics); *see also, e.g.*, *Lipham Constr. Co. v. Lipham*, 2014 WL 11512727, at *1 (N.D. Tex. July 24, 2014) (concluding that failure to plead "facts to demonstrate an offer and acceptance in compliance with the terms of the offer, a meeting of the minds regarding the subject matter of the contract, each party's consent to the terms, and execution with the intent that it be mutually binding" warranted dismissal of breach of contract claim).   SCHST's bare assertion of an "agreement" does not suffice.   *See Iqbal*, 556 U.S. at 662, 678 (rejecting legal conclusions couched as factual allegations).   For this reason, the breach of contract claim against Gallagher should be dismissed.

### C.   SCHST's claims against Gallagher for breach of the good faith and fair dealing and for prompt payment are barred.

SCHST does not address Gallagher's grounds for dismissal of the good faith and fair dealing and prompt-payment claims.   *Compare* Dkt. 34 at 8-10, *with* Dkt. 43 ¶¶ 17-37.   These claims are barred as a matter of law.   *See* Dkt. 32 ¶¶ 45-48 (prompt payment); *id.* ¶¶ 55-56 (good faith and fair dealing).

By statute, the prompt payment provisions of the Texas Insurance Code apply to "an insurer." *See* Tex. Ins. Co. § 542.060(a).  They do not apply to insurance brokers like Gallagher.

Similarly, an insurer's duty of good faith and fair dealing does not extend to insurance brokers who "are not contracting parties with the insured ...." *Lowe v. Whitehead Cargo Consultants LLC*, 2011 WL 221871, at *3 (S.D. Tex. Jan. 20, 2011); *see also GuideOne Mut. Ins. Co. v. Boenker*, 2019 WL 9103419, at *3 (N.D. Tex. May 28, 2019) (same conclusion).  The only contract that SCHST adequately pleaded is its policy with Lloyd's.  *See* Dkt. 32 ¶ 10; *see supra* Part I.B (recommending dismissal of breach of contract claim).  And Gallagher owed no fiduciary duty to SCHST that could give rise to a duty of good faith.  *See, e.g.*, *Envt'l Procs., Inc v. Guidry*, 282 S.W.3d 602, 628 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (declining "to extend the set of formal fiduciary relationships to encompass the relationship of an insurance agent, agency, or broker to a client").  There is no basis for these claims.

### D. SCHT's fraudulent inducement claim against Gallagher fails for lack of a contractual agreement between them.

Although not untimely, *see supra* Part I.A.1, SCHST's fraudulent inducement claim is precluded for failure to plead the existence of a contract with Gallagher.  "Fraudulent inducement ... is a particular species of fraud that arises only in the context of a contract and requires the existence of a

contract as part of its proof.  That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an *agreement between the parties*." *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001) (rejecting this claim where "the parties never reached a final agreement" but instead were still negotiating one).

The amended complaint lacks plausible allegations that SCHST and Gallagher had a binding agreement. *See supra* Part I.B.  The only agreement identified is the insurance policy, which was executed weeks before Gallagher's alleged misrepresentation occurred.  Dkt. 32 ¶¶ 10-11 (policy purchased in July 2017; Gallagher's alleged misrepresentation on August 23, 2017).  An after-the-fact representation could not have induced SCHST to execute the policy. *See Flu Shots of Tex., Ltd. v. Lopez*, 2014 WL 1327706, at *9 (N.D. Tex. Apr. 3, 2014) ("That a party cannot claim fraudulent inducement to enter into an agreement based on representations allegedly made after formation of the contract is evident.").  The fraudulent inducement claim thus fails.

### E.   SCHST adequately and specifically pleaded a fraudulent misrepresentation claim against Gallagher.

On the other hand, the allegations underlying SCHST's fraudulent misrepresentation claim are sufficient.  A fraud claim requires "(1) that a material representation was made; (2) that it was false; (3) that the speaker knew it was false when made or that the speaker made it recklessly without

18

any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it be acted upon by the other party; (5) that the party acted in reliance upon it; and (6) damage." *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992). SCHST had to plead this claim with particularity under Rule 9(b). *See Benchmark Elecs., Inc.*, 343 F.3d at 724.

SCHST's fraud allegations are sufficiently detailed. They allege that, on August 23, 2017, Gallagher—through its representative, Gregory—told SCHST that its equipment list was sufficient to satisfy policy requirements. Dkt. 32 ¶ 11. The complaint also alleges that the representation was materially false because Lloyd's denied coverage based on deficiencies in the equipment list. *Id.* ¶ 27. Other facts support an inference that Gallagher made the misrepresentation at least recklessly, and with the intent that SCHST rely on it. Those facts indicate that Gallagher went to SCHST's facility for the purpose of preparing the equipment list and assured SCHST that its equipment was properly listed (and thus insured). *Id.* ¶ 11. Moreover, SCHST alleges that it was not provided a copy of the policy until after the loss occurred. Dkt. 32 ¶ 28 (alleging "a copy of the policy was not forwarded prior to Hurricane Harvey"). SCHST instead relied on Gallagher's assurances that the list was adequate—although Lloyd's later concluded it was not—causing SCHST's damages equal to the amount that Lloyd's refused to pay. *Id.* ¶ 63. These allegations are enough to satisfy Rule 9(b). *See, e.g., Chaudhary v. Arthur J.*

19

*Gallagher & Co.*, 2021 WL 3423096, at *5 (S.D. Tex. Aug. 5, 2021) (denying motion to dismiss fraud claim against insurance broker).

Gallagher asserts that Lloyd's denial of claim does not necessarily mean that Gallagher misstated policy requirements. Dkt. 34 at 11. But whether the misstatement qualifies as fraud depends on extrinsic facts that cannot be considered at this pleading stage. This Court should deny Gallagher's motion to dismiss the fraudulent misrepresentation claim.

## II.   <u>SCHST's Claims against CRC</u>

The amended complaint scarcely mentions CRC, other than alleging that CRC had a list or appraisal report with SCHST's equipment before and after the loss occurred. Dkt. 32 ¶¶ 11, 19-20, 29. SCHST has not adequately pleaded any claims against CRC.

### A.   **SCHST is not asserting breach of contract or good faith and fair dealing claims against CRC.**

CRC challenges the allegations that it breached a contract and the duty of good faith and fair dealing. Although CRC is referenced in the breach-of-contract allegations, Dkt. 32 ¶ 35, it is not targeted in the duty of good faith and fair dealing claim, *id.* ¶ 55-56 (asserted against "Lloyds and Gallagher" only). Regardless, SCHST has now clarified that it is not pursuing those claims against CRC. Dkt. 45 ¶ 11. These claims should be dismissed.

**B.      SCHST's fraud, negligent misrepresentation, and DTPA claims against CRC fail to satisfy pleading standards.**

CRC also contends that the allegations of negligent and fraudulent misrepresentation and DTPA violations (plus treble damages) are deficient. Dkt. 37 ¶¶ 13-28.  The complaint does not specify factual particulars for these claims.  To the extent these claims are intertwined and premised on the same alleged misstatements, *see* Dkt. 32 ¶¶ 49-52, 62-63, they must satisfy the heightened pleading standard of Rule 9(b).  *See, e.g.*, *Frith*, 9 F. Supp. 2d at 742.  Notably, however, SCHST's allegations fail to meet even the general plausibility test of Rule 8(a).

The complaint mentions that CRC possessed a list with SCHST's equipment information before Hurricane Harvey. Dkt. 32 ¶ 11.  That does not indicate that CRC made a false representation.  The same is true of the few, alleged exchanges between SCHST and CRC after the loss, which assert that CRC failed to send an unspecified report to an unspecified recipient and demanded information from SCHST.  *Id.* ¶¶ 20, 29.  With no allegations that CRC misrepresented any facts, SCHST cannot satisfy the plausibility standard under Rule 8, let alone the stricter requirements of Rule 9(b).  *See, e.g.*, *Davis v. State Farm Lloyds*, 2015 WL 4475860, at *4 (N.D. Tex. July 21, 2015) (rejecting similarly threadbare allegations of negligent misrepresentation under the Rule 8(a) pleading standard); *Smiley Team II, Inc. v. Gen. Star Ins.*

21

*Co.*, 2021 WL 5202412, at *3 (S.D. Tex. Nov. 9, 2021) (simply parroting DTPA language is insufficient to meet Rule 8(a)'s pleading standard), *report and recommendation adopted*, 2021 WL 5987267 (S.D. Tex. Dec. 16, 2021).

Moreover, SCHST's "[g]lobal allegations of wrongdoing" by "Defendants," collectively, "are insufficient to state a claim for relief." *See Armendariz v. Bank of Am., N.A.*, 2015 WL 3504961, at *8 (W.D. Tex. May 21, 2015); *see also Washington v. U.S. Dep't of Hous. & Urban Dev.*, 953 F. Supp. 762, 770 (N.D. Tex. 1996) (rejecting "global allegations that Defendants, as a group," made false statements constituting fraud, negligent misrepresentation, and DTPA violations). SCHST cannot remedy these shortcomings by injecting unpleaded facts—as it tries to do—when responding to CRC's motion to dismiss. *See McDavid v. Hous. Indep. Sch. Dist.*, 2021 WL 4555241, at *4 (S.D. Tex. Oct. 5, 2021) (rejecting attempt to "use a response to a motion to dismiss as a backdoor to add allegations that [plaintiff] did not plead in her complaint"); Dkt. 45 at 14 (attempting to inject new facts).

The allegation that CRC violated the DTPA by failing to inform SCHST that its equipment was not properly listed is also deficient. Dkt. 32 ¶¶ 29, 50. "Mere nondisclosure of material information is not enough to establish an actionable DTPA claim." *Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App.—Fort Worth 2005, no pet.). Instead, a plaintiff must allege both an intent

22

to deceive and that it "would not have entered into the transaction had the alleged material information been disclosed." *Id.*

SCHST's factual allegations identify only one "transaction" that any defendant's actions allegedly induced: the pre-loss preparation and submission of the covered equipment list to Lloyds. *See* Dkt. 32 ¶¶ 10-11. But the defendant at issue was Gallagher, not CRC. *Id.* There is no plausible claim that CRC induced SCHST's reliance on the deficient list, nor that CRC did so with the intent to deceive.

Without a cognizable DTPA claim, SCHST also lacks the predicate for treble damages under the DTPA. *See* Tex. Bus. & Com. Code Ann. § 17.50(b)(1) (authorizing treble damages for knowing violations)*; see also, e.g.*, *KIBO Software, Inc. v. Pink Coconut Boutique, LLC*, 2018 WL 7286482, at *6 (W.D. Tex. Nov. 19, 2018) ("Because the Court finds that Pink Coconut's DTPA claims fail to state a claim, Pink Coconut's claim for treble damages under the DTPA should be dismissed."). Accordingly, SCHST's request for treble damages against CRC fails along with its interrelated claims. *See* Dkt. 32 ¶¶ 53-54.

## C. SCHST's conspiracy allegations against CRC are insufficient.

CRC also attacks the conspiracy claim as deficient under Rule 9(b). Dkt. 37 at 2-3, 15-17. Notably, however, this claim does not pass muster even under Rule 8(a)'s basic pleading standard. *See* Dkt. 32 ¶¶ 57-61, 69-70.

23

The scant allegations about CRC do not plausibly suggest that it unlawfully conspired with anyone. The conspiracy claim just recites the elements of recovery, in rote fashion. *Compare* Dkt. 32 ¶ 70, *with Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005) (listing elements of civil conspiracy). Such bare assertions fail to state a plausible claim. *See Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). As noted, allegations lodged against "Defendants" collectively fail to assert a plausible basis for recovery against CRC specifically. *See, e.g.*, *Armendariz*, 2015 WL 3504961, at *8. Even SCHST's new (unpleaded) facts do not indicate that CRC reached a "meeting of the minds" with anyone to commit an underlying tort—an element of conspiracy. *See* Dkt. 45 ¶ 26 (new assertion that CRC and others engaged in wrongdoing, without claiming that defendants had an agreement to do so); *Enventure Glob. Tech., Inc. v. Mowhawk Energy, Ltd.*, 2016 WL 6820761, at *6 (S.D. Tex. Sept. 26, 2016) (dismissing conspiracy claim with similar deficiency). SCHST's failure to plead a plausible conspiracy claim against CRC warrants dismissal.

### D. SCHST's claims against CRC that are subject to a two-year limitations period, including for unjust enrichment and negligence, are barred by limitations.

Like Gallagher, CRC globally challenges all claims against it—including for unjust enrichment and negligence—as untimely. Dkt. 37 at 17-18. The analysis of limitations with respect to Gallagher similarly forecloses the unjust

enrichment, negligence, and all other two-year limitations claims against CRC.[7]  *See supra* Parts I.A.1 & 2.

The complaint alleges that CRC possessed or failed to provide a list or reports concerning SCHST's equipment before or after the loss occurred.  Dkt. 32 ¶¶ 11, 19, 20, 29.  With respect to CRC's actions, SCHST's claims accrued, at the latest, upon Lloyd's issuance of a deficient payment in April 2018.  *See Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 515.  The discovery rule could not have tolled claims premised on CRC's pre-loss conduct beyond February 2018, when the adjuster (ARM) told SCHST that the equipment was not properly scheduled.  Dkt. 32 ¶ 20; *see TIG Ins. Co.*, 521 F.3d at 358 (plaintiff cannot ignore a "red flag" that warrants investigation); *Murphy*, 964 S.W.2d at 273.  The same goes for CRC's post-loss failures to send or communicate reports before January 2018, which predate ARM's letter flagging problems with the equipment list.  *See* Dkt. 32 ¶¶ 19, 20, 29.  And as addressed above, SCHST could have sued CRC and Lloyd's more than two years before it filed this suit,

---

[7] Also like Gallagher, CRC incorrectly asserts that the fraud claims are subject to a two-year limitations period.  Dkt. 37 ¶ 17.  The limitations period for fraud, however, is *four* years.  Tex. Civ. Prac. & Rem. Code Ann. § 16.004(4).  Nonetheless, the Court has already concluded that the fraud claim fails on other grounds.  *See supra* Part II.A.  But as addressed in this section, the limitations bar does provide alternative grounds for dismissing SCHST's claims against CRC for negligent misrepresentation, conspiracy, and under the DTPA.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (two-year limitations period for injury to property); Tex. Bus. & Com. Code Ann. § 17.565 (two-year limitations for DTPA).

well before Lloyd's refused to pay the appraisal award.  *See, e.g.*, *Triyar Cos., LLC*, 2013 WL 3280033, at *2-4 (final coverage determination not required before insured can sue insurer for declaration of coverage); *Murphy*, 964 S.W.2d at 272 (recognizing court's authority to abate suit against defendant who provided incorrect information while resolving suit against third-party). SCHST's negligence and unjust enrichment claims are thus untimely.

### E. SCHST failed to plead a basis for recovering punitive damages.

Even if SCHST's negligence claim could survive dismissal, CRC has separately challenged the inadequacy of SCHST's pleading with respect to punitive damages.  Dkt. 37 at 16-17.  SCHST did not address this issue.

Because the fraud allegations against CRC should be dismissed, *see supra* Part II.B, only malice or gross negligence could conceivably support recovery of exemplary damages.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003.  Yet the amended complaint contains no facts suggesting that CRC's claimed conduct qualifies as malicious or grossly negligent.  *See id.* § 41.001(7) (malice requires "specific intent ... to cause substantial injury or harm"); *id.* § 41.001(11) (gross negligence requires an act or omission involving "an extreme degree of risk" of harm of which the defendant was actually and subjectively aware, but to which it was consciously indifferent); *see also, e.g.*, *Belton v. Walmart Store Tex., LLC*, 2021 WL 3631146, at *3 (S.D. Tex. Apr. 9,

2021) (dismissing request for exemplary damages for failure to plead facts showing gross negligence or malice); *Sunshine Kids Found. v. Sunshine Kids Juv. Prods., Inc.*, 2009 WL 5170215, at *17 (S.D. Tex. Dec. 18, 2009) (noting similar deficiency when dismissing claim for exemplary damages).  The Court should dismiss the request for exemplary damages against CRC.

## III.   SCHST's claims against Miller

The allegations concerning Miller are almost as sparse as those against CRC.  Miller argues that SCHST's claims are insufficiently pleaded, Dkt. 33, and the Court agrees.

### A.   SCHST abandoned or had disclaimed a number of causes of action.

SCHST has clarified that it is not pursuing claims against Miller for breach of the duty of good faith and fair dealing, Dkt. 32 ¶¶ 55-56, negligent and fraudulent inducement, *id.* ¶¶ 65-68, and under the prompt-pay or misrepresentation provisions of Tex. Ins. Code §§ 541.061, 542.056, 542.058, Dkt. 32 ¶¶ 42-48. *See* Dkt. 41 ¶ 11.  To the extent these claims were asserted against Miller, they should be dismissed.

Despite explicitly pleading that certain claims are limited to other defendants, SCHST now insists that those claims for unfair settlement practices under the Texas Insurance Code, Dkt. 32 ¶¶ 38-41 ("Lloyds and Gallagher"), negligence ("Lloyds, Gallagher, CRC"), *id.* ¶¶ 58-59, unjust

enrichment ("Lloyds, Gallagher, CRC"), and negligent or fraudulent misrepresentation ("Lloyds, Gallagher, CRC"), *id.* ¶¶ 62-64, nonetheless include Miller. Dkt. 41 at 10-17. If SCHST cannot inject new *facts* in response to a motion to dismiss, *see McDavid*, 2021 WL 4555241, at *4, it cannot raise new *claims* that its pleading disclaimed. *See* Dkt. 47 at 1-2 (Miller's reply).

Consistent with its pleading, SCHST should be barred from asserting unfair settlement practices, negligence, unjust enrichment, and negligence/fraudulent misrepresentation claims against Miller.

## B.   The only claims asserted against Miller are inadequately pleaded.

SCHST has, however, alleged breach of contract, DTPA, and civil conspiracy claims against all Defendants—including Miller. Dkt. 32 ¶¶ 32-36, 50-54, 69-70. These are inadequately pleaded.

### 1.   SCHST's breach of contract claim against Miller is deficient.

SCHST fails to address Miller's arguments for dismissal of the breach of contract claim. As Miller notes, Dkt. 33 ¶ 6, there is no allegation that Miller had a contract with SCHST, let alone that Miller breached any such contract. *See* Dkt. 32 ¶¶ 33-35. This is wholly insufficient to state a breach of contract claim, meriting dismissal. *Tarantino Props., Inc. v. Com. Ins. Grp., Westchester*, 2019 WL 13109763, at *1 (S.D. Tex. June 26, 2019) (dismissing similarly deficient breach of contract claim).

28

2.   <u>SCHST has insufficiently pleaded a DTPA claim against
Miller.</u>

The complaint does not link the few factual allegations regarding Miller

with any DTPA violations. Dkt. 32 ¶ 50. To the contrary, the DTPA allegations

address "Defendants" collectively. *Id.* Much of it simply parrots statutory

language from select DTPA provisions. *Id.* (cribbing Tex. Bus. & Com. Code

Ann. §§ 17.46(b)(5), (b)(12), (b)(24)).

Elsewhere in the complaint, SCHST does assert that Miller retained an

entity, ARM, to adjust the insurance claim and thus is responsible (as

principal) for ARM's allegedly false statement after Hurricane Harvey that

SCHST's damaged equipment was not included on the policy's schedule and

therefore was not covered.[8] Dkt. 32 ¶¶ 12, 20-21. These limited allegations do

---

[8] Miller maintains that SCHST cannot sue it for acts committed in Miller's capacity
as Lloyd's agent. Dkt. 47 at 2-3 (citing *Corpus Christi Dev. Corp. v. Carlton*, 644
S.W.2d 521, 523 (Tex. App.—Corpus Christi 1982, no writ)). That principle concerns
*contractual* liability. *See Corpus Christi Dev. Corp.*, 644 S.W.2d at 523. It does not
shield an agent from personal liability for committing its own tortious acts. *See
Leyndecker v. Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984) ("A
corporation's employee is personally liable for tortious acts which he directs or
participates in during his employment."); *see also, e.g., Owens v. City of Tyler*, 2021
WL 4617790, at *7 (Tex. App.—Tyler 2021, no pet.) (characterizing DTPA as a tort).
Moreover, Miller cites no law precluding it from acting in a dual capacity as both as
an agent of Lloyds and as a principal of ARM, with ARM acting as agent of both
Lloyds and Miller. *See, e.g., Goldren Agri-Resources Ltd. v. Fulcrum Energy LLC*,
2012 WL 3776974, at *8 (Tex. App.—Houston [1st Dist.] pet. denied) ("[O]ne may act
simultaneously as an agent of two principals if the principals consent and have
knowledge of the dual agency"). *Cf. Robichaux v. Bordages*, 48 S.W.2d 698, 704 (Tex.
App.—Beaumont 1932, writ ref'd) (observing analogously that a partner acts as
"principal for himself and as agent for his partners").

not meet the lesser pleading standard under Rule 8(a), let alone any heighted pleading requirement under Rule 9(b).

SCHST's allegations do not plausibly suggest that Miller (through ARM) misinformed SCHST that it had "rights, remedies, or obligations" that it did not have, or told SCHST that the policy or any services had "characteristics, uses, or benefits" that did not exist. Dkt. 32 ¶ 50 (citing Tex. Bus. & Com. Code § 17.46(b)(5), (b)(12)). "Rather, [SCHST's] position ... is that the policies *do* have characteristics and involve rights which [Miller, through ARM] fail[ed] to recognize appropriately." *Partain v. Mid-Continent Specialty Ins. Servs.*, 838 F. Supp. 2d 547, 563 (S.D. Tex. 2012) (dismissing DTPA claims under Tex. Bus. & Com. Code Ann. §§ 17.46(b)(5) and (b)(12) for this reason).

SCHST's alternative theory, that Miller and ARM wrongfully failed to disclose information, fares no better. *See* Dkt. 32 ¶ 50 (citing Tex. Bus. & Com. Code Ann. § 17.46(b)(24)); Dkt. 41 ¶ 27 (same). The complaint lacks plausible allegations that SCHST would have declined to enter into a particular transaction had Miller or ARM disclosed specific material information. *See Patterson*, 191 S.W.3d at 827 (requirements for DTPA non-disclosure claim). The only "transactions" alleged are the execution of the policy and the *pre*-loss preparation and submission (by Gallagher) of the equipment list. *See* Dkt. 32 ¶¶ 10-11. In contrast, Miller's (and ARM's) nondisclosures happened after the loss, and after a proper list of covered equipment was (or was not) submitted.

30

*See id.* ¶ 28 (faulting ARM and Miller for not indicating at "the moment the *claim* was made" that equipment needed to be included on the schedule for coverage purposes) (emphasis added).  After-the-fact nondisclosures could not have affected transactions that had already occurred.   The DTPA non-disclosure theory is foreclosed.

### C.    SCHST's conspiracy allegations are insufficient.

Even assuming that SCHST had plausibly stated an underlying tort, the conspiracy claim still would not survive dismissal.  Dkt. 33 ¶ 8.  Just like this claim against CRC, *see supra* Part II.C, SCHST's "formulaic recitation of the elements" does not state a plausible basis for recovery.  *See Twombly*, 550 U.S. at 555; Dkt. 32 ¶ 70.  Collective allegations against "Defendants" do not suffice. *See, e.g.*, *Armendariz*, 2015 WL 3504961, at *8.  Even SCHST's new assertions identify no facts substantiating that Miller had the requisite "meeting of the minds" with someone else to commit an underlying tort.  See Dkt. 41 ¶¶ 29-32 (asserting new facts that ARM, Miller, and others engaged in wrongdoing, without claiming that there was an agreement to do so); *Enventure Global Tech., Inc.*, 2016 WL 6820761, at *6 (lack of meeting-of-minds warranted dismissal of civil conspiracy claim).  The conspiracy claim thus fails.

### <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Defendant Arthur J. Gallagher & Co.'s motion to dismiss (Dkt. 34) be **GRANTED IN**

**PART** and **DENIED IN PART**, and that all Plaintiff SCHST, Inc.'s claims against Gallagher—except for the fraudulent misrepresentation claim—be **DISMISSED**.

It is further **RECOMMENDED** that Defendant Miller Insurance Services, LLP's motion to dismiss (Dkt. 33) be **GRANTED**. All claims against Miller should be **DISMISSED**.

It is further **RECOMMENDED** that Defendant CRC Insurance Services, Inc.'s motion to dismiss (Dkt. 37) be **GRANTED**. All claims against CRC should be **DISMISSED**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on August 23, 2022, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge