```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF TEXAS
 2                    HOUSTON DIVISION
 3
     SCHST, INC. D/B/A/         *
 4   SPACE CITY SERVICES,       *
                                *
 5   PLAINTIFF,                 *
                                *
 6   VS.                        * CASE NO. 4:21-CV-02935
                                *
 7   ARTHUR J. GALLAGHER &      *
     CO., CERTAIN UNDERWRITERS  *
 8   AT LLOYD'S, LONDON;        *
     MILLER INSURANCE           *
 9   SERVICES, LLP; AND CRC     *
     INSURANCE SERVICES, INC.,  *
10                              *
     DEFENDANTS.                *
11
12       *****************************************
                      ORAL DEPOSITION OF
13                      ROBERT THOMAS
                        AUGUST 2, 2023
14                   (REPORTED REMOTELY)
         *****************************************
15
16           ORAL DEPOSITION OF ROBERT THOMAS, produced
17   as a witness at the instance of the PLAINTIFF(S),
18   and duly sworn, was taken in the above-styled and
19   numbered cause on AUGUST 2, 2023, from 10:01 A.M.
20   to 12:48 P.M., before AMY PRIGMORE, CSR, in and for
21   the State of Texas, reported by stenographic means,
22   at the offices of RENNE LAW, PLLC, 2551 Budde Road,
23   Suite 1102, The Woodlands, Texas, pursuant to the
24   Federal Rules of Civil Procedure, and the
25   provisions stated on the record or attached hereto.
```

1       A P P E A R A N C E S
2
3    FOR THE PLAINTIFF(S):
     (REMOTELY)
4         Christine M. Renne
          RENNE LAW, PLLC (TX)
5         2551 Budde Road Suite 1102
          The Woodlands TX 77380
6         crenne@crennelaw.com
7
     FOR THE DEFENDANT(S):
8    (REMOTELY)
          Deanne C. Ayers
9         AYERS & AYERS
          4205 Gateway Drive, Suite 100
10        Colleyville TX 76034
          dayers@ayersfirm.com
11
12
     FOR THE UNDERWRITERS:
13   (REMOTELY)
          Kristie Tobin
14        HFW
          5151 San Felipe, Suite 400
15        Houston, Texas 77056
          Kristie.tobin@hfw.com
16
17
     ALSO PRESENT (REMOTELY):
18        Owen Hill
19
20
21
22
23
24
25     Job No. CS6034314

1                    INDEX
                                                   PAGE
2    APPEARANCES .................................    2
     STIPULATIONS ................................    1
3    SIGNATURE AND CHANGES .......................  118
     REPORTER'S CERTIFICATE.......................  120
4
5              E X A M I N A T I O N S
6    ROBERT THOMAS                                  PAGE
     EXAMINATION                                      4
7    BY MS. AYERS
     EXAMINATION                                     42
8    BY MS. TOBIN
     REEXAMINATION                                   94
9    BY MS. AYERS
     REEXAMINATION                                  110
10   BY MS. TOBIN
11
                    E X H I B I T S
12
     EXHIBIT         DESCRIPTION                   PAGE
13   EXHIBIT 1       CRC LATE PAYMENT                51
                     NOTIFICATION
14   EXHIBIT 2       SPREADSHEET, SPACE CITY         57
                     SERVICES INC. CURRENT
15                   UNIT LIST 6-9-17
     EXHIBIT 3       E-MAIL CHAIN, BEGINNING         70
16                   BATES LABEL SCHST 000427
     EXHIBIT 4       POWER UNIT AND TRAILER          77
17                   LIST
     EXHIBIT 5       LETTER, DATED NOVEMBER          83
18                   30, 2020
     EXHIBIT 6       E-MAIL, DATE AUGUST 23,        110
19                   2017

20
21
22
23
24
25

1  P R O C E E D I N G S
2  * * *
3  ROBERT THOMAS,
4  having been first duly sworn, testified as follows:
5  EXAMINATION
6  BY MS. AYERS:
7  Q. Would you please state your full name.
8  A. Robert Alan Thomas.
9  Q. Mr. Thomas, my name is Deanne Ayers, and I
10 represent Gallagher in this lawsuit. I have some
11 questions for you this morning, and I understand
12 that you have a relationship with the Plaintiff in
13 this case.
14         Is that correct?
15 A. Correct. I had a relationship.
16 Q. Oh. Do you have a current relationship with
17 the Plaintiff?
18         MS. RENNE: With Space City.
19 A. Oh, the Plaintiff? Yeah, I'm sorry. Yes, I
20 do. I thought you were talking about the
21 Defendant, yes.
22 Q. (BY MS. AYERS) What -- what is your
23 relationship to SCHST, Inc., D/B/A Space City
24 Services?
25 A. President of the company.

1  application's content?
2      A.  I don't recall.
3      Q.  As the person that would have been charged
4  with that responsibility, and just your
5  relationship with Mr. Wendel, you would expect the
6  information that he provided to be correct and
7  accurate?
8      A.  Yes, ma'am.
9      Q.  Okay.  Did Mr. Wendel ever come to you, in
10 the time period of June 19th, 2017, through the end
11 of that year, the end of 2017, and tell you that he
12 had made any errors or provided incomplete or
13 inaccurate information with regard to the insurance
14 application that he signed in June of 2017?
15     A.  No, ma'am, not that I recall.
16     Q.  Okay.  And with regard to -- to him
17 indicating that his application information was
18 accurate, as the corporate representative, you
19 would also believe that he was being forthcoming
20 and truthful in giving that response, correct?
21     A.  I would assume, yes, ma'am.
22     Q.  Okay.  Now, are you familiar with an
23 individual named Gilbert Esparza?
24     A.  Yes, ma'am.
25     Q.  And who is that?

1      A.   Gilbert was -- is, I suspect, an insurance
2  agent in El Paso, Texas.
3      Q.   And how did you come to know this person?
4      A.   I met -- I met Gilbert through an industry
5  contact.  I don't know.  It's been many years ago.
6      Q.   Who is the contact?
7      A.   I don't remember off the top of my head.
8      Q.   So you know you met him through a third
9  person, but you don't remember who?
10     A.   Yeah, I was -- I was at a networking -- I
11 was at a networking event or something, is --
12 likely, that's where I met him.
13     Q.   Okay.  Prior to August of 2017, had you ever
14 utilized the services of Gilbert Esparza?
15     A.   Prior to August '17.  I don't -- not that I
16 recall, no, ma'am.
17     Q.   After the hurricane loss in August of 2017,
18 did you call upon the services of Gilbert Esparza,
19 for any reason?
20          MS. RENNE:  Object to form.
21     A.   After the hurricane, we probably --
22 immediately after, I -- I doubt that I reached out
23 to Gilbert for any assistance.
24          If I talked to Gilbert post hurricane, it
25 was probably -- probably way later before -- I -- I

Page 31

1  think Gil is who I moved my policies to after
2  Gregory, right, yeah.
3       So, whenever that was, in 2018, I believe,
4  that's probably about the time that I was
5  struggling with Gallagher with the claim.
6       Q.  (BY MS. AYERS)  Did you ever have
7  Mr. Esparza intervene on your behalf with Lloyd's,
8  regarding the claim?
9       A.  I -- I think by virtue of that broker of
10 record letter, I think he was -- I think I had to
11 go through him a little bit for that.  I didn't
12 really deal with Kevin much after.
13      Q.  Did -- did you ever have Mr. Esparza
14 participate in conference calls or meetings with
15 the individuals adjusting the hurricane claim?
16      A.  I -- I don't -- I don't recall that
17 specifically happening.
18      Q.  And -- and there's -- there's some -- I
19 don't know if it's the proximity of the mic, but
20 I'm having a little bit of trouble hearing you.
21 So, if you could just speak up a little bit, it
22 might -- might help.
23      A.  Okay.
24      Q.  So you don't recall him, on your behalf,
25 communicating directly with the individuals

Veritext Legal Solutions
800-567-8658                                          973-410-4098
EXHIBIT A

Page 32

1   adjusting the claim?
2          MS. RENNE: Object to form.
3     A. It -- it could have happened. I -- I just
4   don't have a -- a -- a direct memory of it
5   happening.
6     Q. (BY MS. AYERS) Would -- would you have been
7   the one directly interacting with Mr. Esparza, or
8   would that have been Mr. Wendel?
9     A. It probably would have been more me.
10     Q. Okay. And did you have Mr. Esparza look at
11   the -- the denial letters or the notice of claim or
12   the appraiser and umpire decisions, relative to the
13   loss?
14     A. I don't -- we weren't with Gil very long,
15   so, I don't think the umpire appraisal -- I don't
16   think all that stuff -- we didn't stay with Gil
17   very long. So I think that was before -- now, the
18   first part of your question was did he -- I have
19   him look at any of the loss data. Perhaps, I did.
20   I -- I -- I can't say definitively.
21     But it -- it might have been as I left
22   Gallagher and was -- I was probably trying to find
23   some help from my new agent, Gil, to -- to try to
24   make that -- try to make heads or tails of it.
25     Q. Now, why didn't you stay with him long?